```
                                              FILED
                                       U.S. DISTRICT COURT
       IN THE UNITED STATES DISTRICT COURT   AUGUSTA DIV.
      FOR THE SOUTHERN DISTRICT OF GEORGIA
              STATESBORO DIVISION           20 JUN 26 PM 2:31
```

UNITED STATES OF AMERICA    *
                            *
v.                          *       CR 606-026-1
                            *
JULIUS PINKSTON             *

# O R D E R

In 2006 Defendant Julius Pinkston was indicted by a federal grand jury for his significant involvement in a large drug conspiracy. Pinkston was not sentenced by this Court until January 17, 2012, because he had absconded for over four years. (See Presentence Investigation Report ¶ 72.) Pinkston was sentenced to 240 months to be served consecutive to any sentence imposed in the Eastern District of Virginia and the Middle District of Pennsylvania. (Doc. 1304, at 2.)

At present, Pinkston has filed a motion for compassionate release, citing 18 U.S.C. § 3582(c)(1)(A) and the First Step Act of 2018. Pinkston attaches a few pages of his prison medical record; the Government has supplied a much fuller picture of Pinkston's health in its supply of prison medical records. The Court notes at the outset that unlike many inmate filings during the COVID-19 pandemic, Pinkston does not rely upon the novel

coronavirus to justify his release. In fact, Pinkston only mentions on an attachment to his motion that he was hospitalized with COVID-19 and released back to the Federal Medical Center in Lexington, Kentucky on May 11, 2020. Instead, Pinkston points to his age and his chronic conditions of lung disease (COPD), enlarged arteries, enlarged prostate, high blood pressure, high cholesterol, and allergies in support of his motion.

The compassionate release provision of 18 U.S.C. § 3582(c)(1)(A) provides a narrow path for a district court to reduce the sentence of a criminal defendant in "extraordinary and compelling circumstances" if such reduction is "consistent with applicable policy statements issued by the [United States] Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Section 1B1.13 of the Sentencing Guidelines provides the applicable policy statement, explaining that a sentence reduction may be ordered where a court determines, upon consideration of the factors set forth in 18 U.S.C. § 3553(a), that "extraordinary and compelling reasons" exist and the defendant does not present a danger to the safety of any other person or the community. U.S.S.G. § 1B1.13. The application note to this policy statement lists three specific examples of extraordinary and compelling reasons to consider reduction of a defendant's sentence under § 3582(c)(1)(A): (1) a medical condition; (2) advanced age; and (3) family circumstances. Id. n.1(A)-(C).

Pinkston bears the burden of demonstrating that compassionate release is warranted. Cf. United States v. Hamilton, 715 F.3d 328, 337 (11th Cir. 2013) (in the context of a motion to reduce under § 3582(c)(2)). Here, Pinkston does not assert any family circumstances that would warrant release. Moreover, while he is 70 years old, the applicable policy statement states that an elderly defendant must be experiencing a serious deterioration in physical or mental health because of the aging process and must have served at least ten years or 75% of his sentence, whichever is less. U.S.S.G. § 1B1.13 n.1(B). Setting aside Pinkston's health, he has not served ten years of his sentence.

This leaves consideration of whether Pinkston has a qualifying serious medical condition. To qualify as extraordinary and compelling, an inmate's medical condition must be "serious and advanced . . . with an end of life trajectory, U.S.S.G. § 1B1.13, app. note 1(a)(i), or must be serious enough that it "substantially diminish[es] the ability of the [inmate] to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover," id., app. note 1(a)(ii). First and foremost, it appears that Pinkston has recovered from his bout with COVID-19. He spent six days at the University of Kentucky Hospital for care and treatment. His discharge summary shows he was well-nourished and not in acute distress. (Gov't Resp. in Opp'n, Doc. 1748, Ex. C, at 200.)  His cardiovascular

system was regular, his pulmonary system was clear with no wheezing, and he had full range of motion in his musculoskeletal system. (Id.)  His discharge condition was stable with signs or symptoms of potential problems either absent or manageable. (Id.) Upon his return to prison, Pinkston was "feeling much better" though weak and equipped with a portable O2 concentrator. (Id. at 9.)  As of May 24, 2020, Pinkston continued to have a cough and was easily fatigued but reported no fever or chills. (Id. at 2.) His pulmonary system was within normal limits. (Id.)  Perhaps most telling of Pinkston's improved condition is the fact that he signed his motion on May 28th and only mentioned his hospitalization for COVID-19.  (See Def.'s Mot., Doc. 1747, at 7.)  In short, Pinkston's health was not sufficiently compromised by COVID-19 to qualify as a serious medical condition.

With respect to Pinkston's other medical conditions, the medical records belie any assertion that he meets the criteria for a serious medical condition.  To the contrary, the medical records show that Pinkston's conditions are well-controlled and managed through medication for which he is undoubtedly primarily responsible.  Pinkston is in stable condition and appears to be well-treated.  Accordingly, he has not established a serious medical condition warranting his release.

Finally, the application note to the applicable policy statement also provides this catch-all category of extraordinary

4

and compelling reasons: **"As determined by the Director of the Bureau of Prisons,** there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with," the aforementioned three categories. U.S.S.G. § 1B1.13 n.1(D) (emphasis added). Through his motion, Pinkston insists that the First Step Act has now given district courts authority to ignore the emphasized language and to determine whether extraordinary and compelling reasons exist outside of the three enumerated examples in U.S.S.G. § 1B1.13 independent of the BOP's determination. The Court disagrees. The First Step Act did not render the Sentencing Commission's policy statement an inappropriate expression of policy. The fact remains that Congress intended that the Sentencing Commission, not the judiciary, determine what constitutes an appropriate use of the "compassionate release" provision. See 28 U.S.C. § 944(t). Indeed, § 3582(c)(1)(A) as amended by the First Step Act *still* requires courts to abide by policy statements issued by the Sentencing Commission. See 18 U.S.C. § 3582(c)(1)(A). Accordingly, this Court will not consider circumstances outside of the specific examples of extraordinary and compelling reasons to afford relief. Accord, e.g., United States v. Lynn, 2019 WL 3805349, at *4 (S.D. Ala. Aug. 12, 2019) ("If the policy statement needs tweaking in light of Section 603(b) [of the First Step Act], that tweaking must be accomplished by the [Sentencing] Commission,

5

not by the courts."); United States v. Johns, 2019 WL 2646663 (D. Ariz. June 28, 2019); United States v. Gross, 2019 WL 2437463 (E.D. Wash. June 11, 2019); United States v. Heromin, 2019 WL 2411311 (M.D. Fla. June 7, 2019); United States v. Willis, 2019 WL 2403192 (D.N.M. June 7, 2019); United States v. Shields, 2019 WL 2359231 (N.D. Calif. June 4, 2019) (stating that there is no "authority for the proposition that the Court may disregard guidance provided by the Sentencing Commission where it appears that such guidance has not kept pace with statutory amendments").

Upon the foregoing, Defendant Julius Pinkston's motion for compassionate release (doc. 1747) is **DENIED**.

**ORDER ENTERED** at Augusta, Georgia, this 26th day of June, 2020.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA